UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES D. HICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:15-cv-02046-SEB-MPB |
| | ) |
| CAROLYN W. COLVIN Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 16) Plaintiff James Hicks seeks judicial review of the Social Security Administration's final decision deeming him ineligible for Disability Insurance Benefits and Supplemental Security Income. The matter is fully briefed. (Docket No. 19; Docket No. 24; Docket No. 27.) It is recommended that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration finding that Plaintiff James Hicks is not disabled.

**Introduction**

On November 20, 2012, Cedric James D. Hicks filed an application for disability and Disability Insurance Benefits under Title II of the Social Security Act and for Social Security Supplemental Security Income disability benefits under Title XVI of the Social Security Act. His application was denied initially and on reconsideration. A hearing was requested and held on

May 12, 2014, before Administrative Law Judge (ALJ) Albert J. Velasquez. On July 2, 2014, the ALJ denied Hicks's application. On October 26, 2015, the Appeals Council denied Hicks's request to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Social Security Commissioner. 20 C.F.R. § 404.981; *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). On December 23, 2015, Hicks timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the

2

Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC. If so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. §

3

405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ—not the Court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

The ALJ found that Hicks had met the insured status requirement of the Social Security Act and that he had not engaged in substantial gainful activity since February 28, 2011, the alleged onset date. Therefore, the ALJ proceeded to step two of the analysis. (Docket No. 14-2 at ECF p. 13).

At step two, the ALJ determined that Hicks, who was forty-eight years old at the time of filing, had a severe impairment of insulin dependent mellitus with polyneuropathy and retinopathy. *Id. See* 20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.* The ALJ also determined that Hicks had the following non-severe impairments: chronic obstructive pulmonary disorder, hypertension, and depression. (Docket No. 14-2 at ECF p. 13–14).

4

The ALJ found that Hicks's chronic obstructive pulmonary disorder and hypertension did not cause more than minimal, if any, limitations. (Docket No. 14-2 at ECF p. 13). In regards to Hicks's depression, the ALJ considered the four broad function areas set out in the disability regulations, i.e., the "paragraph B" criteria. (Docket No. 14-2 at ECF p. 14). The ALJ found that (1) Hicks's activities of daily living were mildly limited, reporting his ability to care for pets and play video games; (2) social functioning was mildly limited, noting that the claimant endorsed good relationships with family members; (3) concentration, persistence, or pace were mildly limited, citing his ability to play video games; and (4) no episodes of decompensation for an extended period. *Id.*

At step three, the ALJ found that Hicks's combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R § 404, subpart P, Appendix 1. (Docket No. 14-2 at ECF pp. 14–15). The ALJ considered Hicks's diabetes mellitus under Listing 9.00, *et seq., Endocrine Disorders* given diabetes mellitus no longer has a separate listing. (Docket No. 14-2 at ECF p. 15). The ALJ noted that the listing requires impairments resulting from endocrine disorders be evaluated under listings for other body systems. *Id.* In relevant part, the ALJ noted that there is no evidence that the claimant's diabetes mellitus resulted in diabetic retinopathy as outlined in Listing 2.00, *et seq.* or diabetic peripheral and sensory neuropathies as outlined in Listing 11.00, *et seq. Id.* The ALJ concludes that there is no medical source statement that opines that Hicks medically equals Listing 9.00 for Endocrine Disorders. *Id.*

Prior to Step four, the ALJ determined that Hicks had the RFC to perform light work with the following limitations:

> [L]ift and carry twenty pounds occasionally and ten pounds frequently; stand for six hours per eight-hour workday; sit for six

> hours per eight-hour workday, provided the work requires no climbing of ladders, ropes, or scaffolds. There should be no repetitive forceful gripping or operation of vibrating tools, and no prolonged reading of fine print or inspection and handling of small objects.

(Docket No. 14-2 at ECF p. 15).

The ALJ concluded that Hicks could not perform any past work, consistent with the vocational expert's (VE) opinion. (Docket No. 14-2 at ECF pp. 19-20). Hicks had worked as a cashier checker and factory machine operator/machine feeder. (Docket No. 14-2 at ECF p. 19). Hicks was classified as an individual closely approaching advanced age, at the age of 48 on the alleged disability onset date, with at least a high school education and an ability to communicate in English. (Docket No. 14-2 at ECF p. 20).

The ALJ found that there were a significant number of jobs in the economy that Plaintiff could still perform. Based on the testimony of the VE and, considering the claimant's age, education, work experience, and RFC, the ALJ concluded he would still be able to perform the jobs of Housekeeper cleaner, courier, and cafeteria attendant. (Docket No. 14-2 at ECF p. 21).

II.  **Review of Plaintiff's Assertions of Error**

   A. **Substantial Evidence Supports the ALJ's Determination that James Hicks was not Disabled Due to Diabetes with Diabetic Neuropathy and Diabetic Retinopathy.**

Hicks asserts that the ALJ's determination, at step three, that there was "no evidence" that Hicks had "diabetic retinopathy" or "diabetic peripheral and sensory neuropathies" was contradicted by the ALJ's determination, at step two, that Hicks had severe impairments of "insulin dependent diabetes melliutus with polyneuropathy and retinopathy." (Docket No. 19 at ECF p. 8). Hicks reasons that this illustrates a failure to "build a rational bridge" from the evidence to the conclusion, necessitating remand. (Docket No. 19 at ECF pp. 8-9). Defendant

argues that the ALJ's decision demonstrates that, although Hicks's diabetes with polyneuropathy and retinopathy satisfied the *de minimis* standard for a severe impairment at step two, the ALJ reasonably concluded that the impairment was not severe enough to meet or equal a listing at step three. (Docket No. 24 at ECF p. 5).

The ALJ's determination at step three that Hicks's impairments did not equal the severity of a listed impairment was limited to one paragraph. (Docket No. 14-2 at ECF pp. 14-15). The ALJ noted that there is no evidence that Hicks's impairment or combination of impairments meets or medically equals the severity of a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). Although the ALJ stated that he considered Hicks's impairments under the appropriate listings, specifically those under Listing 9.00, *et seq.,* for Endocrine Disorders, he did not specifically discuss portions of the record he considered in coming to the conclusion that there was no evidence that supported the standard at step three.

However, the ALJ provided the discussion of Hicks's severe and non-severe impairments, the objective medical evidence, and his credibility directly after step three when he determined Hicks's Residual Functional Capacity. (Docket No. 14-2 at ECF pp. 15-19). This discussion provides sufficient detail to sincerely review the ALJ's step three determination. On review, the Court does not discount a portion of the ALJ's rationale merely because it appears elsewhere in the decision. *Curvin v. Colvin*, 778 F.3d 645 (7th Cir. 2015) (citing, *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5) (7th Cir. 2004)) ("To require the ALJ to repeat such a discussion throughout his decision would be redundant."); *see also Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) ("[W]e examine the [ALJ]'s opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions.").

Considering the ALJ's opinion as a whole, it is evident the ALJ sufficiently met his "duty to articulate" at step three. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The listing for endocrine disorders explains that "[w]e evaluate impairments that result from endocrine disorders under the listings for other body systems." 20 C.F.R. § 404, subpt. P, app. 1, § 9.00. Listing § 9.00B further specifies: "Chronic hyperglycemia, which is longstanding abnormally high levels of blood glucose, leads to long-term diabetic complications by disrupting nerve and blood vessel functioning. This disruption may have many different effects in other body systems." *Id.* at § 9.00B.5.a(ii). "For example, we evaluate . . . diabetic retinopathy under 2.00 . . . [and] diabetic peripheral and sensory neuropathies under 11.00." *Id.*

Reference to Listing § 2.00 further shows that, "[t]o evaluate your visual disorder, we usually need a report of an eye examination that includes measures of your best-corrected central visual acuity (see 2.00A5) or the extent of your visual fields (see 2.00A6)," as well as "documentation of the cause of the [vision] loss." *Id.* at § 2.00A.4. Listing § 11.14 requires peripheral neuropathies "[w]ith disorganization of motor function as described in 11.04B, in spite of prescribed treatment," *id.* at § 11.14, and Listing § 11.04B requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." *Id.* at § 11.04B. Listing §11.00C requires "[p]ersistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances . . . which occur singly or in various combinations." *Id.* at § 11.00C.

In step three, the ALJ indicated that there was no evidence "that hyperglycemia has caused . . . diabetic retinopathy under listing 2.00 . . . [or] diabetic peripheral and sensory neuropathies under listing 11.00." (Docket No. 14-2 at ECF p. 15). Then, immediately after that

8

in his RFC assessment he discussed Hicks's treatment records for his diabetes with retinopathy and polyneuropathy, noting Hicks's neurological and optical examination findings were largely "within normal limits." (Docket No. 14-2 at ECF p. 17). The ALJ noted that, despite Hicks's October 2012[1] complaints of blurred vision (Docket No. 14-7 at ECF p. 11), both June 2011 (Docket No. 14-7 at ECF p. 68) and November 2012 (Docket No. 14-7 at ECF p. 48) vision testing revealed only mild diabetic retinopathy. (Docket No. 14-2 at ECF p. 16). The ALJ noted that Plaintiff was prescribed multifocal glasses for presbyopia, instructed about the importance of good blood sugar control and regular eye exams, and no invasive treatments was recommended. (Docket No. 14-2 at ECF pp. 16-17). The ALJ further noted that Hicks's January 2013 optical examination by Dr. Palmer was within normal limits: his pupils were equal, round, and reactive to light and accommodation; visual acuity was normal and measured 20/20 in both eyes; visual fields and color vision were intact; and the tympanic membranes were intact with good light reflex. (Docket No. 14-2 at ECF p. 17) (citing Docket No. 14-7 at ECF pp. 33-34). This evidence demonstrates Hicks's retinopathy was not of the requisite severity under Listings § 9.00B.5.a(ii) and 2.00.

The ALJ also noted that, in October 2012, Hicks complained of tingling in his hands and results from a nerve conduction study were compatible with polyneuropathy.[2] (Docket No. 14-2 at ECF p. 16) (citing Docket No. 14-7 at ECF pp. 1-12). However, the ALJ noted that Hicks denied tingling or numbness in July 2012 (Docket No. 14-7 at ECF p. 54) and his January 2013 neurological examination was within normal limits, revealing normal motor and sensory systems, normal reflexes, and normal fine motor skills. (Docket No. 14-2 at ECF p. 17) (citing Docket No. 14-7 at ECF pp. 32-38). The ALJ also cited Hicks's October 2013 neurological

---

[1] The ALJ mistakenly states that this exam occurred in October 2011. (Docket No. 14-7 at ECF p. 11).
[2] The ALJ mistakenly states that this exam occurred in October 2011. (Docket No. 14-7 at ECF p. 11).

9

examination, which was normal, including normal sensation and normal deep tendon reflexes. (Docket No. 14-2 at ECF p. 17) (citing Docket No. 14-8 at ECF p. 12).[3] This evidence demonstrates that the ALJ reasonably found that Hicks's neuropathies did not satisfy the standard for disability set forth in Listings §§ 9.00B.5.a(ii) and 11.00C, 11.04B, and 11.14.

The ALJ's step two findings that Hicks's diabetes with retinopathy and polyneuropathy was severe does not undermine his step three finding that the impairment did not meet or equal any listing because step two is a *de minimis* screening device, whereas step three is used to identify claimants whose impairments are so severe that they are *per se* disabled. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013); *Johnson v. Sullivan*, 922 F.2d 346, 347 (7th Cir. 1990). Moreover, the ALJ's discussion of objective medical evidence in his RFC analysis provides the necessary detail to review the ALJ's Step Three determination in a meaningful way. *Curvin*, 778 F.3d at 650 ("We do not discount [the discussion] simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant."). In sum, substantial evidence supports the ALJ's determination that Hicks was not disabled due to diabetes mellitus with diabetic polyneuropathy and diabetic retinopathy.

### B. The ALJ Reasonably Declined to Seek Another Medical Opinion Regarding Equivalence at Step Three.

Hicks argues that the ALJ failed to enlist an endocrinologist to testify as to whether the Hicks's insulin dependent diabetes mellitus with polyneuropathy and retinopathy medically equaled any Listed impairment. (Docket No. 19 at ECF p. 10). Hicks argues that the denial must be reversed because the ALJ's medical equivalence determination is not based on medical opinion, but on the ALJ's layperson opinion. (Docket No. 19 at ECF p. 11). Defendant asserts

---

[3] The ALJ mistakenly states that this exam occurred in February 2014.

that the ALJ reasonably declined to seek another medical opinion at step three and that the ultimate legal question of whether a listing is met or equaled is the responsibility of the ALJ. (Docket No. 24 at ECF p. 9).

An ALJ is required to consider the medical opinion of a physician or a psychologist designated by the Commissioner, but is not bound by that consultant's finding and the ultimate legal question of whether a listing is met or equaled is the responsibility of the ALJ. S.S.R. 96-6p (July 2, 1996); 20 C.F.R. § 404.1526(e) ("For cases at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or Appeals Council."). An ALJ is required to obtain an updated medical opinion when, (1) no additional evidence is received but in the opinion of the ALJ the symptoms, signs, and laboratory findings suggest that a judgment of equivalence may be reasonable; or (2) additional evidence is received that in the opinion of the ALJ may change the state-agency medical consultant's finding on medical equivalence. S.S.R. 96-6p (July 2, 1996). Therefore, an updated opinion is not required when an ALJ finds that a claimant is not disabled under the regulations. *Id.*

Here, at step three the ALJ noted that "[t]here is no medical source statement that opines that the claimant medically equals listing 9.00." (Docket No. 14-2 at ECF p. 15). As discussed in detail above, the ALJ provided sufficient detail in his RFC determination to provide for a meaningful review of his Step three determination and it is evident, based on the evidence cited above, that the ALJ relied on objective medical evidence and not his layperson opinion in coming to the conclusion that Hicks's impairments or combination of impairments is not of a severity to meet or medically equal the criteria of any impairment in the Listings.

Hicks relies on *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004) for his assertion that the ALJ failed to obtain the opinion of an endocrinologist in his step three determination. However, *Barnett* is incongruous to Hicks's case. In *Barnett*, the ALJ improperly disregarded medical records in his medical equivalence analysis and the court could not locate an agency form that would have satisfied the ALJ's duty to consider an expert's opinion on medical equivalence. 381 F.3d at 669-71. In Hicks's case, as previously discussed, the ALJ properly considered the medical records and indicated that he afforded great weight to both the State agency psychologist's opinion that the claimant's depression is nonsevere (citing Docket No. 14-3 at ECF pp. 2-9) and the State agency physician's physical assessment because the opinion was well supported by specific citations to normal examination findings and the opinion is consistent with the record as a whole (citing Docket No. 14-3 at ECF pp. 10-17). As the ALJ noted, "there are no opinions from the claimant's treating physicians." (Docket No. 14-2 at ECF p. 19). Therefore, these state-agency physician's opinions were uncontroverted. *See Anderson v. Bowen*, 868 F.2d 921, 925 (7th Cir. 1989) (un-contradicted consulting physicians' conclusions that claimant did not meet listings constitutes substantial evidence in support of conclusion).

It is well established that the ALJ's decision is considered as a whole. Therefore, despite the fact that these observations appear in the RFC discussion, they provide sufficient detail to allow the Court to conclude that the ALJ reasonably determined that the record contained sufficient evidence on the issue of medical equivalence. The ALJ appropriately declined to summon another expert opinion. 20 C.F.R. § 404.1529(b) (ALJ "may" ask for and consider the opinion of a medical expert); *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (ALJ had discretion to call on medical expert but was not required to do so).

### C. Substantial Evidence Supports the ALJ's Step Five Determination that Hicks Could Perform Some Jobs.

Plaintiff argues that substantial evidence does not support the ALJ's step five determination because the ALJ's hypothetical question to the VE did not accurately describe Hicks's impairments, namely because the ALJ failed to account for the diabetic polyneuropathy and retinopathy that impaired the functioning of his hands and legs. (Docket No. 19 at ECF p. 12). Defendant argues that the ALJ reasonably concluded that, despite Plaintiff's impairments, he remained capable of performing a limited range of light work. (Docket No. 24 at ECF p. 12). In fact, Defendant asserts that the ALJ specifically accounted for the physical limitations stemming from Plaintiff's diabetes with retinopathy and polyneuropathy by "precluding [him] from climbing ladders, ropes, or scaffolds; restricting any repetitive forceful gripping or operation of vibrating tools; and eliminating prolonged reading of fine print or inspection and handling of small objects." (Docket No. 14-2 at ECF p. 17).

At step five, the ALJ concluded based on the RFC that Hicks could perform the job titles of Housekeeper/Cleaner, Courier, and Cafeteria Attendant. (Docket No. 14-2 at ECF pp. 20-21). These are the same jobs that the VE testified to based upon the ALJ's hypothetical, which also encapsulated the same limitations as his ultimate RFC description. (Docket No. 14-2 at ECF pp. 45-46). Here, the Court finds that the hypothetical the ALJ provided the VE, which ultimately led to his step five findings reasonably considered Hicks's impairments, specifically, his diabetes mellitus with retinopathy and polyneuropathy.

During the hearing, the ALJ's initial hypothetical to the VE included a person "who can lift and carry 50 pounds occasionally, 25 pounds frequently, can stand and walk and carry for six of eight hours, sit for six of eight hours provided the work requires no climbing of ropes, ladders, or scaffolds." (Docket No. 14-2 at ECF p. 35). This hypothetical was classified as medium.

13

(Docket No. 14-2 at ECF p. 44). Thereafter, the ALJ and the VE heard testimony from Hicks regarding his limitations. (Docket No. 14-2 at ECF pp. 35-44). Following this testimony, the ALJ asked the VE to assume a light categorization, which encompasses lifting and carrying no more than twenty pounds occasionally and ten pounds frequently, standing for six of eight hours, sitting for six of eight hours; and adding the requirements "that the work not require climbing of ropes, ladders, or scaffolds, would not require repetitive, forceful gripping, or the operation of vibrating tools" and "no prolonged reading of fine print or inspection or handling of small objects." (Docket No. 14-2 at ECF pp. 45-46). These additional limitations directly correlate to Hicks's testimony regarding the impact of his diabetes mellitus with polyneuropathy and retinopathy, and illustrate that the ALJ gave full consideration to Hicks's impairments when providing the revised hypothetical to the VE, which was ultimately relied upon in the ALJ's step five findings.

Again, the referenced hypothetical provided the same limitations as the RFC in the ALJ's decision. Therefore, we can look to the ALJ's RFC discussion for further evidence that the ALJ reasonably concluded that, despite Hicks's impairments, he remained capable of performing a limited range of light work.

In his RFC discussion, the ALJ cited Plaintiff's relatively normal physical examination findings, discussed above in subsection one; his conservative treatment in the form of routine monitoring, diagnostic testing, and medication refills; his good response to medication; his activities of daily living, including playing video games; and the medical source opinions deeming him capable of a full range of light work. (Docket No. 14-2 at ECF pp. 18-19). Based upon the record as a whole, the ALJ concluded that Hicks's allegations of severe physical limitations were not entirely credible. (Docket No. 14-2 at ECF pp. 16-19). *See Schmidt v.*

*Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) ("[T]he ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible.") S.S.R. 96-8p (July 2, 1996) ("[I]n assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments.").

The opinion evidence in the record further supports the ALJ's decision. The ALJ adopted an RFC for light work with postural and manipulative restrictions, which is more restrictive than the full range of light work opined by state-agency reviewing physicians Drs. Brill and Corcoran. (Docket No. 14-3 at ECF pp. 6-7, 14-15, 25-26, 34-35). Of significance, no doctor suggested any greater work-related limitations than those imposed by the ALJ. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803 (7th Cir. 2005) (substantial evidence supported RFC assessment where "both of the consulting physicians who reviewed Sienkiewicz's records opined that she could meet the requirements of light work by sitting for six hours in an eight-hour day, and no doctor ever suggested that any greater limitation was required.").

The ALJ built a logical bridge from the evidence to his RFC finding, which is the same as his hypothetical that gave rise to the ALJ's Step 5 findings. Therefore, the ALJ appropriately relied upon the VE's testimony that Hicks can perform a significant number of jobs available in the national economy. *Schmidt*, 201 F.3d at 972 ("[S]o long as, in light of all the evidence, reasonable minds could differ concerning whether the claimant is disabled, we must affirm the ALJ's decision denying benefits.") (internal quotation marks and citation omitted).

## Conclusion

For the foregoing reasons, I recommend that the Court **AFFIRM** the ALJ's opinion. Any objections to this Report and Recommendation must be filed with the Clerk in accordance with

28 U.S.C. § 636(b)(1). Failure to file timely objections within 14 days after service will constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** this 7th day of December, 2016.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.